463 F.3d 285
 Anthony W. THOMAS, A.W.T., Inc., t/d/b/a Independence Deli
v.
INDEPENDENCE TOWNSHIP; Joseph Chiodo, Individually and as a member of the Independence Township Board of Supervisors; Gene Fleegal, Individually and as a member Independence Township Board of Supervisors; Wendy Potts Fleegal, Individually and as Secretary and Treasurer of the Independence Township Board of Supervisors; Fred Schmidt, Individually and as a member Independence Township Board of Supervisors; Sam Butler, Individually and as a member Independence Township Board of Supervisors
Joseph Chiodo, Gene Fleegal, Wendy Potts Fleegal, Fred Schmidt and Sam Butler, Appellants.
 No. 05-2275.
 United States Court of Appeals, Third Circuit.
 Argued March 31, 2006.
 Filed September 14, 2006.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Alan E. Johnson, Esq. (Argued), Marshall, Dennehey, Warner, Coleman & Goggin, Pittsburgh, PA, for Appellants.
 Colm W. Kenny, Esq., Gianni Floro, Esq. (Argued), Tarasi, Tarasi & Fishman, Pittsburgh, PA, for Appellee.
 Before SMITH and COWEN, Circuit Judges, and ACKERMAN*, District Judge.
 OPINION
 COWEN, Circuit Judge.
 
 
 1
 The individual defendants appeal the District Court's denial of their qualified immunity defense at the dismissal stage. The District Court found that the allegations of plaintiffs' complaint adequately plead the commission of acts that violate extremely broad, general propositions of law, and, therefore, denied qualified immunity at the dismissal stage. Today, we make clear that a qualified immunity determination must be made in light of the specific factual context of the case, and when a complaint fashioned under the simplified notice pleading standard of the Federal Rules does not provide the necessary factual predicate for such a determination, the district court should grant a defense motion (whether formally or informally made) for a more definite statement regarding the facts underlying the plaintiff's claim for relief.
 
 
 2
 We continue to stand by established precedent that recognizes that a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense, and a mere absence of detailed factual allegations supporting a plaintiff's claim for relief under § 1983 does not warrant dismissal of the complaint or establish defendants' immunity. Nevertheless, our decision today recognizes that a lack of factual specificity in a complaint prevents the defendant from framing a fact-specific qualified immunity defense, which, in turn, precludes the district court from engaging in a meaningful qualified immunity analysis. The appropriate remedy is the granting of a defense motion for a more definite statement under Federal Rule 12(e). Even when a defendant does not formally move for a more definite statement, the district court has the discretion to demand more specific factual allegations in order to protect the substance of the qualified immunity defense and avoid subjecting government officials who may be immune from suit to needless discovery and the other burdens of litigation.
 
 
 3
 Because the complaint in this case presents a textbook example of a pleading as to which a qualified immunity defense cannot reasonably be framed, we will vacate the District Court's order insofar as it relates to qualified immunity and remand to the District Court with instructions to order the plaintiffs to file a more definite statement. In addition, for the reasons given below, we will reverse the District Court's order denying defendants' motion to dismiss for failure to state a claim with respect to the claims brought under 42 U.S.C. § 1983 and § 1986 against Wendy Potts Fleegal and the claim brought under 42 U.S.C. § 1986 against Sam M. Butler, and remand with instructions to grant plaintiffs leave to amend the complaint. For the reasons stated below, we will also reverse the District Court's order denying defendants' motion to dismiss for failure to state a claim with respect to the unlawful taking claim under the Fifth and Fourteenth Amendments, insofar as the claim is brought against the Individual Defendants.
 
 I.
 
 4
 This is a civil rights action brought by Anthony W. Thomas and A.W.T., Inc. d/b/a Independence Deli ("Independence Deli") against Independence Township ("Township"), Joseph Chiodo, the Chairman of the Township Board of Supervisors, Gene Fleegal, a Township Board member, Fred Schmidt, a Township Board member, Wendy Potts Fleegal, the Township's Secretary and Treasurer, and Sam M. Butler, a member of the Board's recreation committee (the "Individual Defendants"). The complaint purports to assert, against the Individual Defendants, claims under 42 U.S.C. § 1983 for deprivations of equal protection, due process, free speech, and political association, and unreasonable search and seizure, as well as claims for conspiracy under 42 U.S.C. § 1985(3), neglect to prevent conspiracy under 42 U.S.C. § 1986, abuse of process, commercial disparagement, and civil conspiracy.[1]
 
 
 5
 The complaint alleges that since January of 2001, plaintiffs have pursued the transfer of a restaurant liquor license to the Independence Deli in the Township. The Township has steadfastly opposed the transfer and denied plaintiffs' successive applications. In response, plaintiffs have petitioned the state court for redress. The crux of plaintiffs' complaint is that during this same time frame, the Individual Defendants have engaged in a campaign of harassment and intimidation against plaintiffs.
 
 
 6
 Defendant Sam M. Butler has allegedly made false and defamatory statements to the Township's residents about Thomas, his business, and his Lebanese-American ancestry. The Township's police officers, whom Board members Joseph Chiodo, Gene Fleegal, and Fred Schmidt have the statutory authority to supervise, have allegedly engaged in the following conduct: (1) "entering the Plaintiffs['] business without probable cause or valid reason;" (2) wrongly "accusing the Plaintiff, Anthony W. Thomas, of violating the law;" (3) "misrepresenting the laws;" (4) "conducting surveillance of Plaintiffs, their businesses, and patrons from an area located across the street from Plaintiffs' business;" (5) "increasing and heightening police presence and surveillance;" (6) "subjecting the Plaintiffs to unreasonable and unlawful search and seizure;" and (7) threatening and/or "causing unwarranted investigations of the Plaintiffs by other governmental agencies." (Complaint ¶ 40.)
 
 
 7
 The complaint alleges that Individual Defendants Joseph Chiodo, Gene Fleegal, and Fred Schmidt were aware of the police misconduct but failed to take any action to abate it. In addition, the complaint avers that the Individual Defendants have "portray[ed] the Plaintiff[s] . . . in a false light," "act[ed] under color of state law for an unlawful purpose mainly to prohibit Mr. Thomas from engaging in a lawful enterprise, solely based upon Mr. Thomas' race and ancestry," and "engag[ed] in the foregoing conduct . . . because of his race." (Complaint ¶ 40.)
 
 
 8
 The Individual Defendants filed a motion to dismiss arguing, inter alia, that the complaint, insofar as it asserts claims against them in their individual capacities, should be dismissed on the basis of qualified immunity. They reasoned that "it is impossible to evaluate whether a particular action of a particular individual defendant violated clearly established law, since it is impossible to know, on the basis of the Complaint, what the action is." (App. at 58.) In an opinion entered March 29, 2005, and a supplemental opinion entered July 27, 2005, the District Court denied the motion to dismiss without prejudice to the Individual Defendants' right to reassert the qualified immunity defense in a motion for summary judgment based on a more fully developed record.
 
 
 9
 Under the collateral-order doctrine, we have jurisdiction to review the District Court's denial of qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
 
 II.
 A.
 
 10
 We have stated that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir.2001) (citations and internal quotation marks omitted). The Individual Defendants have not argued that their conduct as alleged in the complaint does not violate clearly established law. Rather, they make the novel argument that plaintiffs' complaint is subject to dismissal on the basis of qualified immunity because the complaint does not contain any factual allegations that would negate their qualified immunity defense. More specifically, the Individual Defendants claim that they are entitled to qualified immunity because the complaint does not contain factual allegations supporting a claim of violation of clearly established law. This argument is legally unsound.
 
 
 11
 "[T]he qualified-immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Behrens v. Pelletier, 516 U.S. 299, 305, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (internal quotation marks, brackets, and citations omitted). An essential attribute of qualified immunity is the "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Mitchell, 472 U.S. at 526, 105 S.Ct. 2806. The immunity is intended to protect officials from the potential consequences of suit, including distraction from official duties, inhibition of discretionary action, and deterrence of able people from public service. Id. "[E]ven such pretrial matters as discovery are to be avoided if possible, as `[i]nquiries of this kind can be peculiarly disruptive of effective government.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
 
 
 12
 Because qualified immunity bestows immunity from suit, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The Supreme Court has admonished that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." Harlow, 457 U.S. at 818, 102 S.Ct. 2727. Thus, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell, 472 U.S. at 526, 105 S.Ct. 2806.
 
 
 13
 Here, the Individual Defendants argue that plaintiffs' complaint is subject to dismissal because plaintiffs have failed to allege facts showing that the Individual Defendants' conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Behrens, 516 U.S. at 305, 116 S.Ct. 834. They also contend that plaintiffs should not be allowed to survive a qualified immunity defense at the motion to dismiss stage by crafting a complaint so lacking in factual detail that it effectively avoids a qualified immunity analysis. (Appellant's Brief 23.) Their argument is not without some appeal since imposition of such a pleading requirement would facilitate the early resolution of the qualified immunity issue and would avoid the risk of subjecting public officials who are immune to suit from the burdens of discovery.
 
 
 14
 While facially appealing, the Individual Defendants' argument ultimately lacks merit because it conflates qualified immunity with the merits of a plaintiff's cause of action under § 1983. In Gomez v. Toledo, 446 U.S. 635, 635-36, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), the Supreme Court considered the issue of whether, in an action brought under § 1983 against a public official whose position might entitle him to qualified immunity, a plaintiff must plead allegations in anticipation of the affirmative defense. The Gomez Court began its analysis by elucidating the distinction between a plaintiff's cause of action under § 1983 and a claim of qualified immunity:
 
 
 15
 [T]wo — and only two — allegations are required in order to state a cause of action under [§ 1983]. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.
 
 
 16
 Id. at 640, 100 S.Ct. 1920. The Gomez Court observed that neither the language of § 1983 nor its legislative history suggests that a plaintiff has the duty to plead facts relevant to a qualified immunity defense in order to state a claim. See id. at 639-40, 100 S.Ct. 1920. Qualified immunity, explained the Court, is a defense available to the government official in question, not a part of the plaintiff's cause of action which he must denigrate. Id. at 640, 100 S.Ct. 1920. Citing to the Federal Rules, the Court stated that "[s]ince qualified immunity is a defense, the burden of pleading it rests with the defendant." Id. (citing Fed.R.Civ.P. 8(c) (imposing upon the defendant the burden of pleading any "matter constituting an avoidance or affirmative defense")). The Court concluded that there is "no basis for imposing on the plaintiff an obligation to anticipate such a defense. . . ." 446 U.S. at 640, 100 S.Ct. 1920.
 
 
 17
 The Individual Defendants argue that Gomez is no longer good law because the standard for measuring qualified immunity has since changed. At the time the Gomez Court rendered its decision, the standard for measuring qualified immunity contained a subjective component. Id. at 641, 100 S.Ct. 1920. In Harlow, however, the Supreme Court eliminated the subjective good faith component, replacing it with a purely objective standard. 457 U.S. at 818-19, 102 S.Ct. 2727. The Individual Defendants question the continued force of the Gomez rule of pleading since the facts relevant to the immunity defense are now no longer exclusively within the knowledge and control of the defendant.
 
 
 18
 However, since the date of the Supreme Court's decision in Harlow, the Court has reaffirmed the Gomez rule of pleading. Crawford-El v. Britton, 523 U.S. 574, 595, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). In Crawford-El, the Supreme Court considered whether federal courts may apply a heightened evidentiary standard in § 1983 unconstitutional motive cases brought by prisoners against government officials. Id. at 577-78, 118 S.Ct. 1584. In refusing to allow a heightened evidentiary standard, the Court observed that "we have consistently declined similar invitations to revise established rules that are separate from the qualified immunity defense." Id. at 595, 118 S.Ct. 1584. Significantly, the Crawford-El Court stated that it has "refused to change the Federal Rules governing pleading by requiring the plaintiff to anticipate the immunity defense." Id. (citing Gomez, 446 U.S. at 639-40, 100 S.Ct. 1920). The Court explained that "questions regarding pleading, discovery, and summary judgment are most frequently and most effectively resolved either by the rulemaking process or the legislative process." 523 U.S. at 595, 118 S.Ct. 1584.
 
 
 19
 We read Crawford-El as a reaffirmation of the rule announced in Gomez that the burden of pleading a qualified immunity defense rests with the defendant, not the plaintiff. Our reading of Crawford-El is consistent with general rules of pleading prescribed by the Federal Rules, which require the plaintiff to set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief," and place on the defendant the burden to set forth any "matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(a), (c).
 
 
 20
 We recognize that the Supreme Court stated in Mitchell and restated in Behrens that "`[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" Behrens, 516 U.S. at 306, 116 S.Ct. 834 (quoting Mitchell, 472 U.S. at 526, 105 S.Ct. 2806). Notably, however, neither Mitchell nor Behrens specifically addressed the propriety of imposing a burden of pleading allegations in anticipation of a qualified immunity defense on the plaintiff. Rather, Mitchell and Behrens dealt with the appealability of orders denying qualified immunity. In Mitchell, the Supreme Court "h[e]ld that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable `final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." 472 U.S. at 530, 105 S.Ct. 2806. In Behrens, the Supreme Court clarified that an order denying qualified immunity at the summary judgment stage is immediately appealable even in cases where the defendant brought a prior appeal of an unfavorable qualified immunity ruling at the motion to dismiss stage. 516 U.S. at 301-11, 116 S.Ct. 834. Moreover, the Mitchell Court itself recognized that "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." 472 U.S. at 527-28, 105 S.Ct. 2806. Indeed, in concluding that a denial of qualified immunity is immediately appealable, the Mitchell Court reasoned that a claim of immunity is sufficiently separable from, and collateral to, the rights asserted in a plaintiff's action to satisfy the requirements of the collateral order doctrine. Id. at 527-29, 105 S.Ct. 2806. In our view, Mitchell supports our conclusion that a plaintiff need not plead allegations relevant to an immunity claim in order to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).
 
 
 21
 We read the above-referenced statement in Mitchell and Behrens to mean that when a plaintiff, on his own initiative, pleads detailed factual allegations, the defendant is entitled to dismissal before the commencement of discovery unless the allegations state a claim of violation of clearly established law. Mitchell, 472 U.S. at 526, 105 S.Ct. 2806. We do not read Behrens and Mitchell as establishing an unprecedented rule of pleading requiring a plaintiff to set forth allegations negating an affirmative defense.
 
 
 22
 As stated in Gomez and reaffirmed in Crawford-El, the burden of pleading qualified immunity rests with the defendant, not the plaintiff. Therefore, we conclude that a plaintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds.[2] Accordingly, even if we were to assume that the allegations in the complaint were too vague and conclusory to state a claim of violation of clearly established law, that pleading deficiency would not entitle the Individual Defendants to dismissal of the complaint on the basis of qualified immunity or any other ground.
 
 B.
 
 23
 Failing that argument, the Individual Defendants make the related argument that, at a minimum, the complaint does not plead allegations supporting a constitutional violation. A court ruling on a qualified immunity issue must make a threshold inquiry as to whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Thus, we will consider the threshold issue of whether plaintiffs have alleged a deprivation of a constitutional right at all. See Wright v. City of Philadelphia, 409 F.3d 595, 604-07 (3d Cir.2005) (Smith, J., concurring). For the reasons stated below, we conclude that, except with respect to the claims brought under 42 U.S.C. § 1983 and § 1986 against Wendy Potts Fleegal, and the claim brought under 42 U.S.C. § 1986 against Sam M. Butler, and, as discussed supra, except with respect to the unlawful taking claim insofar as it is brought against all of the Individual Defendants, the complaint adequately alleges the commission of constitutional violations by the Individual Defendants.
 
 1.
 
 24
 As an initial matter, we reject the Individual Defendants' argument that we should apply a heightened pleading standard in cases in which a defendant pleads qualified immunity. In Evancho v. Fisher, 423 F.3d 347 (3d Cir.2005), we held that a civil rights complaint brought under § 1983 against a government official need not satisfy a heightened pleading standard in order to state a claim for relief. Id. at 351-53. We did not expressly address whether a particularity requirement applies in civil rights actions in which the defendant pleads qualified immunity. However, we heavily relied upon the teachings of two Supreme Court cases: Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), and the Supreme Court's guidance in those cases applies with equal force in cases in which the defendant raises a qualified immunity defense.
 
 
 25
 In Leatherman, the Supreme Court held that a federal court may not apply a heightened pleading standard in civil rights cases alleging municipal liability under § 1983. 507 U.S. at 168. The Leatherman Court reasoned that Rule 9(b) of the Federal Rules imposes a particularity requirement with respect to averments of fraud and mistake, but does not mention complaints alleging municipal liability under § 1983. Id. The Court opined that imposition of a specificity requirement in cases alleging municipal liability is a "result which must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." Id.[3]
 
 
 26
 Similarly, in Swierkiewicz, the Supreme Court considered whether a heightened pleading standard applies in employment discrimination cases. 534 U.S. at 508, 122 S.Ct. 992. In holding that a heightened standard does not apply, the Court explained that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." Id. at 513, 122 S.Ct. 992. The Court highlighted that Rule 9(b) provided for greater specificity only with respect to averments of fraud or mistake. Id. The Court reiterated that "complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a)." Id. In so concluding, the Court echoed its words in Leatherman: "[a] requirement of greater specificity for particular claims is a result that `must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" Id. at 515, 122 S.Ct. 992 (quoting Leatherman, 507 U.S. at 168, 113 S.Ct. 1160).
 
 
 27
 The marching orders of the Supreme Court in both Leatherman and Swierkiewicz are clear: the notice pleading standard of Rule 8(a) applies in all civil actions, unless otherwise specified in the Federal Rules or statutory law. There is no federal rule or statute that prescribes a heightened pleading standard in § 1983 civil rights actions in which the defendant pleads a qualified immunity defense. Hence, we now make clear that which was implied in Evancho: a civil rights complaint filed under § 1983 against a government official need only satisfy the notice pleading standard of Rule 8(a), regardless of the availability of a qualified immunity defense.
 
 2.
 
 28
 Applying a notice pleading standard, and construing the facts in a light most favorable to plaintiffs, we now consider whether the complaint adequately alleges the deprivation of plaintiffs' constitutional rights. Under a simplified notice pleading standard, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). As the Supreme Court has advised, the Federal Rules "`do not require a claimant to set out in detail the facts upon which he bases his claim.'" Leatherman, 507 U.S. at 168, 113 S.Ct. 1160 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Rather, the complaint must only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47, 78 S.Ct. 99. At the outset, we reject the Individual Defendants' argument that the complaint is subject to dismissal due to the lack of detailed factual allegations. In Alston v. Parker, 363 F.3d 229 (3d Cir.2004), we noted that a civil rights complaint was not subject to dismissal due to the absence of factual allegations. Id. at 233 n. 6. We reasoned that "a plaintiff need not plead facts," but, instead, "need only make out a claim upon which relief can be granted." Id. Should more facts be necessary to define the disputed facts and issues, we noted that other procedural mechanisms, such as discovery, are available. Id. One year later, in In re Tower Air, Inc., 416 F.3d 229 (3d Cir.2005), we reiterated that "a plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts." Id. at 237. We qualified that "supporting facts should be alleged, but only those necessary to provide the defendant fair notice of the plaintiff's claim and the `grounds upon which it rests.'" Id. (quoting Conley, 355 U.S. at 47, 78 S.Ct. 99). With these principles in mind, we turn to the question posed in Saucier, namely, whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201, 121 S.Ct. 2151.
 
 
 First Amendment Claims
 
 
 29
 In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether `the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" McKee v. Hart, 436 F.3d 165, 170 (3d Cir.2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir.2000)); see also Crawford-El v. Britton, 523 U.S. 574, 589 n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right.").
 
 
 30
 Here, the complaint alleges that the Individual Defendants have engaged in a campaign of harassment and intimidation in retaliation against plaintiffs for exercising their First Amendment rights. The complaint asserts that the retaliatory action has chilled plaintiffs' speech and discouraged them from seeking judicial redress. Although "it is generally a question of fact whether a retaliatory campaign of harassment has reached the threshold of actionability under § 1983," Suppan, 203 F.3d at 233,[4] construing the allegations in plaintiffs' favor, we conclude that plaintiffs have adequately pled First Amendment retaliation claims under the Free Speech and Petition Clauses.[5]
 
 
 Fourth Amendment Claim
 
 
 31
 The Fourth Amendment recognizes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Fourth Amendment protection extends in some measure to businesses. See G.M. Leasing Corp. v. United States, 429 U.S. 338, 353, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (noting that corporations have some Fourth Amendment rights, but, by their special nature, may open themselves to intrusions that would not be permissible in a purely private context).
 
 
 32
 Here, the complaint sets forth the basic relevant facts and makes reference to an "unreasonable and unlawful search and seizure." (Complaint ¶¶ 40, 49.) The complaint indicates that the allegedly unreasonable search and seizure occurred at plaintiffs' business establishment and was part of a course of conduct "beginning in 2001." (Complaint ¶¶ 39-40.) In addition, the complaint avers that the Individual Defendants "us[ed] excessive force with the Plaintiff, Anthony W. Thomas." (Complaint ¶ 71.) Under the simplified notice pleading standard, we conclude that plaintiffs have sufficiently alleged a Fourth Amendment claim.
 
 
 Fourteenth Amendment Due Process Claim
 
 
 33
 The Fourteenth Amendment prohibits state deprivations of life, liberty, or property without due process of law. Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir.1984). We note that an individual does not have a protected property interest in reputation alone. Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Similarly, the denial of plaintiffs' application for a liquor license transfer cannot support a due process claim. See Appeal of Spankard, 138 Pa.Super. 251, 10 A.2d 899, 903 (1940). However, "the liberty to pursue a calling or occupation . . . is secured by the Fourteenth Amendment." Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1259 (3d Cir.1994) (internal citations and quotation marks omitted).
 
 
 34
 The complaint alleges that the Individual Defendants' campaign of defamation, harassment, and intimidation has deprived plaintiffs of their liberty and property interests in their business without due process of law. Construing these allegations in plaintiffs' favor, we conclude that plaintiffs have adequately pled a violation of their Fourteenth Amendment due process rights. Aside from the qualified immunity issue, plaintiffs' ability to succeed on such a due process claim depends on whether they can show that the alleged harassment "remove[d] or significantly alter[ed]" plaintiffs' liberty and property interests in their business. See San Jacinto Savings & Loan v. Kacal, 928 F.2d 697, 704 (5th Cir.1991) (reversing the district court's order granting summary judgment and allowing the plaintiff to proceed on her § 1983 due process claim where there was evidence that the police officers' harassment of plaintiff and her customers caused the plaintiff to lose so much business that she was forced to close her business and default on her lease).
 
 
 35
 
 Fourteenth Amendment Equal Protection Claim
 
 
 
 36
 The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) ("[A] successful equal protection claim[] [may be] brought by a `class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Here, the complaint alleges that the Individual Defendants engaged in a campaign of harassment in order to deprive plaintiffs of their "right to not have the law enforced in a selective fashion against them." (Complaint ¶ 50.) The complaint avers that the Individual Defendants engaged in the misconduct "solely based upon Mr. Thomas' race and ancestry," and that plaintiffs are "subject to the exercise of police and official power and actions to which similarly situated persons are not subject by the Defendants." (Complaint ¶¶ 41, 60.) Based upon these allegations, we conclude that plaintiffs have adequately alleged an equal protection claim. See Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 423-26 (3d Cir.2003) (indicating, without deciding, that a campaign of harassment undertaken against plaintiffs with a racially discriminatory intent might support an equal protection claim).[6]
 
 
 37
 
 Claims Brought Under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986
 
 
 
 38
 Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir.2006) (quoting 42 U.S.C. § 1985(3)). Section 1986 provides as follows:
 
 
 39
 [E]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented. . . .
 
 
 40
 42 U.S.C. § 1986. Except to the extent that the § 1986 claim is brought against defendants Wendy Potts Fleegal and Sam M. Butler, which is discussed below, we conclude that the allegations of the complaint adequately allege constitutional violations which form the basis of plaintiffs' claims for relief under § 1985(3) and § 1986.
 
 
 41
 
 Certain Claims Against Wendy Potts Fleegal, the Township's Secretary and Treasurer, and Sam M. Butler, Member of the Township Recreation Committee
 
 
 
 42
 With respect to the claims brought under 42 U.S.C. § 1983 and § 1986 against Wendy Potts Fleegal, the Secretary and Treasurer of the Township, and the claim brought under 42 U.S.C. § 1986 against Sam M. Butler, member of the Township Recreation Committee, we conclude that the allegations of plaintiffs' complaint do not support cognizable claims. There are no allegations showing that Wendy Potts Fleegal or Sam M. Butler were personally involved, through personal direction or actual knowledge and acquiescence, in the wrongs alleged with respect to these claims. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A[n] [individual government] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.") (citations omitted). As a result, we conclude that the claims brought under 42 U.S.C. § 1983 and § 1986 against Wendy Potts Fleegal, and the claim brought under 42 U.S.C. § 1986 against Sam M. Butler, must be dismissed, with leave to amend.
 
 
 43
 Based upon the foregoing, we conclude that the complaint adequately alleges cognizable constitutional claims against all Individual Defendants, with the exception of the § 1983 and § 1986 claims against Wendy Potts Fleegal and the § 1986 claim against Sam M. Butler, and, as discussed supra, the unlawful taking claim insofar as it is brought against the Individual Defendants. Accordingly, with those exceptions, the Individual Defendants are not entitled to dismissal on qualified immunity grounds and/or for failure to state a claim for relief.
 
 C.
 
 44
 Our conclusion that the Individual Defendants are not entitled to qualified immunity at this time does not end our inquiry. In order to protect the substance of the qualified immunity defense and avoid unnecessarily subjecting the Individual Defendants who may be immune from suit to needless discovery and the other burdens of litigation, we will remand this case to the District Court with instructions to order plaintiffs to file a more definite statement under Rule 12(e) so that the Individual Defendants may reassert, and the District Court may reconsider, the qualified immunity issue in light of the factual context of this case.
 
 1.
 
 45
 We recognize that there is an inherent tension between federal qualified immunity jurisprudence and the concept of notice pleading. See Jacobs v. City of Chicago, 215 F.3d 758, 765 n. 3. (7th Cir.2000) (noting the tension between qualified immunity and the notice pleading requirements of Rule 8). On one hand, the Supreme Court has stated that resolution of the qualified immunity defense entails a fact-specific inquiry, see Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), which should be made at the earliest possible stage in litigation, Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The Supreme Court has stated that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Behrens v. Pelletier, 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (internal quotation marks and citations omitted). Moreover, the Supreme Court has made denials of qualified immunity at the dismissal stage immediately appealable. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
 
 
 46
 On the other hand, the simplified notice pleading standard requires a complaint to plead only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A complaint fashioned under a simplified notice pleading standard often fails to provide sufficient factual information for the defendant to frame a proper qualified immunity defense. For the same reason, the district court is oftentimes hard-pressed to conduct a fact-specific qualified immunity analysis at an early stage in the litigation.
 
 
 47
 This case, perhaps better than any other, illustrates the incompatibility between the concept of notice pleading and the qualified immunity doctrine, and the resulting quandary faced by defendants pleading the defense. Here, plaintiffs have crafted a complaint lacking in detailed factual allegations. While the complaint complies with the simplified notice pleading standard of the Federal Rules, which itself is a close call, it clearly does not provide good fodder for the framing of a qualified immunity defense. The District Court, in turn, was unable to engage in a meaningful fact-specific qualified immunity analysis, and, therefore, denied qualified immunity "without prejudice to [defendants'] right to raise their arguments again, under Federal Rule of Civil Procedure 56, after the factual record was more fully developed." (App. at 9.) As a result, the Individual Defendants who may be immune from suit must engage in discovery and succumb to the other burdens of litigation, all the while forgoing the very protections afforded by qualified immunity.
 
 
 48
 Unsurprisingly, plaintiffs insist that their complaint is amenable to a qualified immunity analysis. They posit that it is clearly established that it is unlawful to harass and intimidate a person based upon his or her race; to conduct searches and seizures of a person without a warrant or probable cause; and to use excessive force against a person in an effort to harass and intimidate. (Response Brief 7-10.) However, these are the kinds of broad propositions of law that cannot guide a court in determining whether a constitutional right is clearly established. If such broad propositions of law were sufficient for purposes of the qualified immunity analysis, "[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Moreover, "Harlow would be transformed from a guarantee of immunity into a rule of pleading." Id.
 
 
 49
 In Saucier, the Supreme Court explained that the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." 533 U.S. at 201, 121 S.Ct. 2151. Illustrating the level of specificity with which the constitutional right must be defined, the Saucier Court observed that "the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness . . . is not enough." Id. at 201-02, 121 S.Ct. 2151. Rather, said the Court, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.
 
 
 50
 We do not doubt that plaintiffs' allegations support a violation of extremely abstract constitutional rights. As the District Court stated, "a reasonable official would know that directing or permitting the police to harass a citizen because of his race or ethnicity, through unjustified warrantless searches, intimidation, or otherwise, or participating in a conspiracy to do so, would violate an individual's constitutional rights." (App. at 12.) However, when the qualified immunity inquiry is framed at that level of abstraction, the defense fails in its purpose to protect government officials who are immune from the burdens of discovery. Given the Supreme Court's guidance in Saucier and Anderson, we decline to sanction such a result.
 
 2.
 
 51
 In order to provide government officials the protections afforded by qualified immunity, a district court must avail itself of the procedures available under the Federal Rules to facilitate an early resolution of the qualified immunity issue. As the Supreme Court has admonished, albeit in the context of unconstitutional-motive cases against public officials, "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense . . . so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." Crawford-El, 523 U.S. at 597-98, 118 S.Ct. 1584. "`[A] firm application of the Federal Rules of Civil Procedure' is fully warranted" and may lead to the prompt resolution of insubstantial claims. Harlow, 457 U.S. at 820 n. 35, 102 S.Ct. 2727 (quoting Butz v. Economou, 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).
 
 
 52
 When presented with a complaint that does not lend itself to an early resolution of the qualified immunity issue, a district court has several options. First, a district court may order the plaintiff to reply to the defendant's answer pleading qualified immunity. Crawford-El, 523 U.S. at 598, 118 S.Ct. 1584. Second, a district court may grant a defense motion for a more definite statement under Rule 12(e) with respect to the conduct of which the plaintiff complains. Id. The district court should avail itself of these options before addressing the immunity question, which sometimes requires complicated analysis of legal issues. Id. If the plaintiff's action survives these hurdles, the plaintiff ordinarily will be entitled to some discovery, but the district court may limit the timing, sequence, frequency, and extent of that discovery under Rule 26. Id. at 598-99, 118 S.Ct. 1584. Beyond these procedural tools, summary judgment remains a useful tool for precluding insubstantial claims from proceeding to trial. Id. at 600, 118 S.Ct. 1584.
 
 
 53
 The simplified notice pleading rule is made possible by these "pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." Conley v. Gibson, 355 U.S. 41, 47-48 & n. 9, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, we charge the district court with the task of utilizing these procedures to protect the substance of the qualified immunity defense. In this regard, we note that the district court has broad discretion to utilize these procedures in a manner that is useful and equitable to the parties. See Crawford-El, 523 U.S. at 600-01, 118 S.Ct. 1584.
 
 
 54
 We wish to highlight the particular usefulness of the Rule 12(e) motion for a more definite statement. Under Rule 12(e), a defendant may move for a more definite statement "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). The Rule 12(e) "motion shall point out the defects complained of and the details desired." Id. When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific qualified immunity defense. In turn, the district court cannot conduct the kind of fact-specific inquiry contemplated in Saucier. The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief.
 
 
 55
 A defendant who makes a motion for a more definite statement under Rule 12(e) may join that motion with a Rule 12(b) motion to dismiss asserting the qualified immunity defense, which should be held in abeyance during the pendency of the Rule 12(e) motion. Fed.R.Civ.P. 12(g) ("A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party."). When presented with an appropriate Rule 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief. Even when a defendant has not formally expressed the need for a definite statement, the district court has the discretion to order a more definite statement, in observance of the Supreme Court's mandate to facilitate an early resolution of the qualified immunity issue and in order to avoid a waste of judicial resources. See Crawford-El, 523 U.S. at 600-01, 118 S.Ct. 1584 (recognizing the district court's broad discretion to utilize civil procedures in a manner that is useful and equitable to the parties); see also Fed.R.Civ.P. 1 ("The[] [rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.").
 
 
 56
 If the plaintiff provides a more definite statement in compliance with the district court's order, the defendant may, upon leave of court, supplement the Rule 12(b)(6) motion to dismiss by framing the qualified immunity argument within the factual context of the case. Once the motion has been supplemented, the Rule 12(b)(6) motion asserting qualified immunity should be expeditiously briefed and considered by the district court at the earliest possible stage in the litigation. Until the Rule 12(b)(6) motion is resolved, all discovery must be stayed. See Harlow, 457 U.S. at 818, 102 S.Ct. 2727. Of course, if the plaintiff fails to provide a more definite statement within ten days after notice of the order or within such other time as the court may fix, the court may strike the pleading. Fed.R.Civ.P. 12(e).
 
 
 57
 In this case, the Individual Defendants did not formally move for a more definite statement, but in their Rule 12(b) motion to dismiss they argued that "it is impossible to evaluate whether a particular action of a particular individual defendant violated clearly established law, since it is impossible to know, on the basis of the Complaint, what the action is." (App. at 58.) Their argument was essentially that the complaint was "so vague or ambiguous that [they] cannot reasonably be required to frame a responsive pleading." Fed. R.Civ.P. 12(e). Indeed, the District Court recognized that the essence of their argument was an expressed need for more definite factual allegations. The District Court observed that "the individual defendants did not argue the substantive merits of the [qualified immunity] doctrine, but alleged instead that they were prevented from doing so due to the factual insufficiency of plaintiffs' complaint." (App. at 11.) Given the clear implication of their argument and the unquestionable need for more specific allegations concerning the conduct of which plaintiffs complain, we believe that the most appropriate procedural step in this case is for the District Court to order a more definite statement.
 
 
 58
 Accordingly, we will vacate the District Court's order insofar as it relates to qualified immunity and remand to the District Court with instructions to treat the motion to dismiss as a consolidated motion to dismiss and motion for a more definite statement. Because plaintiffs' complaint does not provide sufficient factual information for the framing of a proper qualified immunity defense, we instruct the District Court to grant the motion for a more definite statement, although we leave to the District Court's discretion whether or not to require the Individual Defendants to "point out the defects complained of and the details desired." Fed.R.Civ.P. 12(e). We further instruct the District Court to hold the motion to dismiss in abeyance during the resolution of the motion for a more definite statement, and to stay all discovery pending resolution of the motion to dismiss. Finally, if and when plaintiffs provide a more definite statement in compliance with the District Court's order, we instruct the District Court to reconsider the qualified immunity issue in light of the factual context of this case.
 
 III.
 
 59
 For the foregoing reasons, the order of the District Court entered on March 29, 2005, insofar as it relates to qualified immunity, will be vacated, and the case remanded with the instructions delineated above. The order, insofar as it relates to plaintiffs' alleged failure to state a claim, will be reversed with respect to the claims brought under 42 U.S.C. § 1983 and § 1986 against Wendy Potts Fleegal and the claim brought under 42 U.S.C. § 1986 against Sam M. Butler, and the case remanded with instructions to grant plaintiffs leave to amend the complaint. In addition, the order, insofar as it relates to plaintiffs' alleged failure to state a claim, will be reversed with respect to the unlawful taking claim under the Fifth and Fourteenth Amendments to the extent that the claim is brought against the Individual Defendants, and the case remanded with instructions to the District Court to dismiss the claim to that extent.
 
 
 
 Notes:
 
 
 *
 Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The complaint purports to assert an unlawful taking claim under the Fifth and Fourteenth Amendments. There is nothing in the record that indicates that any public official was authorized, either directly or unofficially, to engage in any taking without compensation. Further, there cannot be a taking under the Fourteenth Amendment unless it is shown that property was taken for public purposes. At oral argument, even when questioned by the Panel, counsel was unable to articulate how the facts in this case rose to the level of a public taking cause of action. Accordingly, we direct the District Court to dismiss the Takings Clause claim insofar as it is brought against the Individual Defendants
 
 
 [2]
 Because we conclude that plaintiffs have no duty to plead allegations in anticipation of a qualified immunity defense, we rather easily conclude that plaintiffs do not have the concomitant duty to do so with particularity. In the next section of this opinion, we address the issue of whether plaintiffs have an obligation to satisfy a heightened pleading requirement with respect to the allegations supporting their claim for relief
 
 
 [3]
 TheLeatherman Court rejected the argument that a municipality's freedom from respondeat superior liability is the equivalent of immunity from suit. 507 U.S. at 166. The Court therefore had no occasion to consider whether a heightened pleading standard was necessary to avoid evisceration of a municipality's immunity from suit or "whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." Id. at 166-67, 113 S.Ct. 1160.
 
 
 [4]
 In this regard, we note that there is a "dearth of precedent of sufficient specificity... regarding [an individual's] First Amendment right to be free from retaliatory harassment."McKee, 436 F.3d at 173.
 
 
 [5]
 The complaint purports to assert a violation of plaintiffs' First Amendment right to freedom of political association. We cannot rule out that with the addition of supporting allegations, plaintiffs might be able to allege such a constitutional violation
 
 
 [6]
 The complaint also alleges in generic terms that the Individual Defendants "enforced [the law] in a selective fashion against them in retaliation for exercising their [c]onstitutionally protected rights." (Complaint ¶ 50.) However, "[a] pure or generic retaliation claim [ ] simply does not implicate the Equal Protection Clause."Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir.1997); accord Maldonado v. City of Altus, 433 F.3d 1294, 1308 (10th Cir.2006); R.S.W.W., Inc. v. City of Keego Harbor, 397 F.3d 427, 440 (6th Cir.2005).